## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

STATE CONTRACTING & ENGINEERING
CORPORATION, a Florida corporation,

       Plaintiff,

vs.

STATE OF FLORIDA, FLORIDA DEPARTMENT
OF TRANSPORTATION; RECCHI AMERICA,
INC., a Florida corporation; THE MURPHY
CONSTRUCTION CO., a Florida
corporation; THE HARDAWAY COMPANY, a
Georgia corporation; HUBBARD CONSTRUCTION
COMPANY, a Florida corporation; BALFOUR BEATTY
CONSTRUCTION, INC., a Delaware corporation, and;
COMMUNITY ASPHALT CORP., a Florida
corporation,

      Defendants.

_____/

## 97  7014

CASE NO.:

## CIV-DAVIS

### MAGISTRATE JUDGE
### BROWN

FILED BY _____

97 AUG 21 PM 12: 25

CARLOS JUENKE
CLERK U.S. DIST. CT.
S.D. OF FLA.-MIAMI

D.C.

### ORIGINAL COMPLAINT

For its Complaint, the Plaintiff, STATE CONTRACTING & ENGINEERING

CORPORATION, states as follows:

### JURISDICTION AND PARTIES

1.   The Plaintiff, STATE CONTRACTING & ENGINEERING CORPORATION ("SCEC"),

is a corporation organized under the laws of the state of Florida having its principal place

of business in Fort Lauderdale, Florida.

2.   The Defendant, STATE OF FLORIDA, by and through the FLORIDA DEPARTMENT

OF TRANSPORTATION (hereinafter collectively "FDOT"), located in Tallahassee,

Florida, administers public works related construction throughout the state of Florida.

More specifically, FDOT is responsible for the design, engineering, construction and



maintenance of road improvement projects within the state of Florida, including the Southern District of Florida. FDOT responsibilities include, among other responsibilities, the design, engineering, construction and maintenance of sound barrier walls of the type which are the subject of the claims set forth hereinbelow.

3.   The Defendant, RECCHI AMERICA, INC. (hereinafter "RECCHI" or "COMPETING CONTRACTOR"), is a corporation organized under the laws of the state of Florida, having its principal place of business in Coral Gables, Dade County, Florida.   Upon information and belief, RECCHI is engaged in the business of road construction and related projects throughout the state of Florida, including the Southern District of Florida.

4.   The Defendant, THE MURPHY CONSTRUCTION CO. (hereinafter "MURPHY" or "COMPETING CONTRACTOR"), is a Florida corporation having its principal place of business in the city of West Palm Beach, Palm Beach County, Florida.   Upon information and belief, MURPHY is engaged in the business of road construction and related projects throughout the state of Florida, including the Southern District of Florida.

5.   The Defendant, The HARDAWAY COMPANY (hereinafter "HARDAWAY" or "COMPETING CONTRACTOR"), is a Georgia corporation having a place of business address located in Columbus, Georgia.   Upon information and belief, HARDAWAY is engaged in the business of road construction and related projects throughout the state of Florida, including the Southern District of Florida.

6.   The Defendant, HUBBARD CONSTRUCTION COMPANY (hereinafter "HUBBARD" or "COMPETING CONTRACTOR"), is a Florida corporation having a place of business address located in Winter Park, Florida.   Upon information and belief, HARDAWAY is

2

engaged in the business of road construction and related projects throughout the state of Florida, including the Southern District of Florida.

7.    The Defendant, BALFOUR BEATTY CONSTRUCTION, INC. (hereinafter "BALFOUR" or "COMPETING CONTRACTOR"), is a Delaware corporation having a place of business address located in Atlanta, Georgia. Upon information and belief, BALFOUR is engaged in the business of road construction and related projects throughout the state of Florida, including the Southern District of Florida.

8.    The Defendant, COMMUNITY ASPHALT CORP., (hereinafter "COMMUNITY" or "COMPETING CONTRACTOR"), is a Florida corporation having a principal place of business address located in Fort Lauderdale, Broward County, Florida. Upon information and belief, COMMUNITY is engaged in the business of road construction and related projects throughout the state of Florida, including the Southern District of Florida.

9.    This is an action arising under the Patent Laws, Trademark Laws & Civil Rights Laws of the United States, including Title 15, Section 1125(a), Title 35, Section 281 and Title 42, Section 1983.

10.   The Court has Jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(3), 1338; 15 U.S.C. § 1121; and, the principles of pendant jurisdiction.

11.   Venue is proper in this District under 28 U.S.C. §§1391(b), 1391(c), and 1400.

## GENERAL ALLEGATIONS

12.   SCEC is engaged in the business of heavy and highway construction.

13.   At all times material hereto, SCEC was the exclusive licensee and/or owner of all substantial rights, and the assignee of the proprietary designs, engineering specifications,

-3-

inventions and patent rights from STATE PAVING CORP., a Florida corporation, relating to an integrated column and pile for use in building structures in sandy soil, including (i) the right to sue and recover for the unauthorized use of such designs and specifications and (ii) the right to sue and recover for past and present infringement of the patent rights asserted herein. It is, thus, understood that all allegations herein by SCEC are intended as inclusive of both itself and its predecessor in interest, STATE PAVING CORP.

14. Between 1989 and 1990, SCEC expended considerable time, effort and monies in the development of an integrated column and pile for use in building structures in sandy soil. SCEC's designs and engineering specifications for such integrated column and pile were both unique and proprietary to SCEC, and such fact was both communicated to and known by the FDOT no later than 1992. FDOT subsequently acknowledged the value and worth of such designs and engineering specifications as both innovative and unique by acceptance and the incorporation thereof into FDOT's specifications for the construction of sound barrier walls built within the state of Florida from and after July 30, 1990 (the date of Executed Supplemental Agreement #2 VECP, for State Job No: 86070-3505). Pursuant to the foregoing agreement and Section 4-3.5.7 of the FDOT *Standard Specifications for Road & Bridge Construction* (1986), FDOT paid SCEC fifty percent (50%) of the savings realized and/or anticipated from such innovative and unique designs and specifications for the aforementioned state job.

15. On June 29, 1990, inventor Michael C. Bone, an officer of STATE PAVING CORP., filed a United States patent application, Serial No. 545,557, which described the unique and proprietary integrated column and pile for use in building structures in sandy soil

-4-

incorporating Bone's designs and engineering specifications; and, which further described a unique and proprietary method for constructing the aforementioned integrated column and pile. Concurrent with the filing of this application, Bone assigned all right, title and interest in said invention, patent applications and all patents issuing therefrom, to STATE PAVING CORP., by an assignment, who thereafter executed an assignment to SCEC.

16. The aforementioned application was subsequently divided, in accordance with the separate and distinct inventions described therein, into two patent applications. One application was directed to the apparatus of the integrated column and pile for use in building structures in sandy soil, and the second to a method for constructing such an integrated column and pile. Each of these separate patent applications was ultimately allowed by the United States Patent and Trademark Office as U.S. Pat. No. 5,234,288 (directed to the method for constructing the integrated pile being and issued on August 10, 1993), and U.S. Pat. No. 5,429,455 (directed to the integrated column and pile for use in building structures in sandy soil and issued on July 4, 1995). Copies of these Letters Patents are appended hereto as Exhibits "A" (method), and "B" (apparatus).

17. While the invention was being developed, SCEC entered into a contract with the FDOT for construction of road improvements on I-95 (State Road 9) in Broward County, State Job No. 86070-3505. After said invention was developed, SCEC presented documents describing a design change for construction of a Noise Barrier Wall on I-95, which design incorporated one or more of the inventions described and claimed in Exhibits "A" and/or "B".

18. Upon information and belief, at all times pertinent hereto and no later than 1992, FDOT

was aware that the sound barrier wall design and construction of SCEC's VECP for State Job No. 86070-3505 was the subject of a pending patent application.

19.   After the introduction and use of SCEC's invention on the State Project No. 86070-3505, FDOT solicited bids for additional state road project(s), which solicitation(s) described a ground mounted sound barrier wall design utilizing the inventions owned by and/or exclusively licensed to SCEC, and further included in such solicitation(s) the engineering drawings and specifications which designs, engineering drawings and specifications incorporated one or more of SCEC's inventions.

20.   Within or incident to the solicitation(s) alleged in paragraph 16 above, and with full knowledge of SCEC's proprietary rights and interest in the inventions for an integral combination of a column and pile for use in building structures in a sandy soil, FDOT specifically stated that the said wall design was "unpatented", which statement explicitly and/or by implication, was calculated to be misleading and otherwise inaccurately characterize SCEC's proprietary designs, engineering drawings and specifications so as to convey the impression that the designs, engineering drawings and specifications developed by SCEC were freely available to all to use and copy without payment therefore to SCEC.

21.   FDOT contracts describing and requiring the construction of a ground mounted sound barrier wall design utilizing SCEC's proprietary designs, engineering drawings and specifications and the patented inventions were ultimately awarded to:

-6-

| FDOT Contract No. | Bid letting-Completion Dates | Project Location (County) | Barrier Wall (Square Feet) | Projected Cost Savings To FDOT | State Prime Contractor/ Sub Contractor |
|---|---|---|---|---|---|
| 86070-3505 | 9/27/89-2/20/91 | Broward County, Fl | 208,801 | $626,403 | STATE PAVING CORP. |
| 99004-3420 | 10/31/90-3/12/92 | Palm Beach County, Fl | 492,111 | $1,476,333 | RECCHI |
| 86095-3463 | 8/28/91-10/15/95 | Broward County, Fl | 130,437 | $391,311 | BALFOUR BEATTY/ RECCHI |
| 86070-3506 | 9/23/92-6/1/94 | Broward County, Fl | 274,469 | $823,407 | STATE PAV -ING CORP. |
| 93220-3406/ 3445 | 10/7/92-7/13/94 | Palm Beach County, Fl | 28,495 | $84,485 | HARDAWA. /RECCHI |
| 93220-3412 | 7/27/94-4/19/96 | Palm Beach County, Fl | 258,758 | $776,274 | MURPHY |
| 72280-3424 | 12/6/95 Open | Duval County, Fl | 310,229 | $930,687 | HUBBARD |
| 93220-3426 | 1/24/96-10/18/96 | Palm Beach County, Fl | 40,839 | $122,517 | SCEC |
| 93220-3437 | 10/25/95-Open | Palm Beach County, Fl | 44,089 | $132,267 | COMM. ASPHALT/ RECCHI |
| 3220-3440, 3441, and 3443 | 1/29/97-Open | Palm Beach County, Fl | 106,060 | $318,180 | HUBBARD |
| 97870-3313 | 1/29/97-Open | Dade County, Fl | 99,600 | $298,800 | RECCHI |
| 72001-3444 | 3/26/97-Open | Duval County, Fl | 92,072 | $276,216 | HUBBARD |
| 93220-3442, 3439 | 7/30/97-Open | Palm Beach County, Fl | 136,617 | $409,851 | HUBBARD |
| TOTAL | | | 2,222,577 | $6,666,731 | |

22.   In accordance with FDOT's bidding instructions, neither the solicitation for bids nor the winning bids by the COMPETING CONTRACTORS or SCEC included, as a cost of construction, an allowance for payment of a royalty to SCEC, although SCEC's patent had issued prior to the date of the awards and/or dates of completion of the contracts to the COMPETING CONTRACTORS.

23.   FDOT has solicited bids for road construction projects from COMPETING CONTRACTORS, and/or other competing contractors, which specify SCEC's designs, engineering drawings and specifications for an integral combination of a column and pile for use in building structures in a sandy soil which incorporate one or more of SCEC's inventions.   Upon learning of such continued solicitations, SCEC filed a timely notice of its objection to FDOT or its contractor bidders, further advised prospective bidders, in writing, that all ground mounted noise walls, which were to be constructed in accordance with the integral combination of a column and pile for use in building structures in a sandy soil being specified by FDOT, were the subject of one issued patent and that a second patent was pending; and that the unauthorized use of SCEC's designs, engineering drawings and specifications for an integral combination of a column and pile for use in building structures in a sandy soil was in violation of SCEC's patent rights and would subject both FDOT and the contractor(s) to liability for infringement.   This notice was in accordance with 35 U.S.C. § 287 (hereinafter also "Statutory Notice").

24.   Subsequent to the aforesaid Statutory Notice, FDOT has and continues to specify SCEC's designs, engineering drawings and specifications for an integral combination of a column and pile for use in building structures in a sandy soil.   FDOT continues to solicit third

-8-

parties to make, use and practice one or more of the inventions encompassed by SCEC's patents in violation of SCEC's patent rights.

25.     Subsequent to the aforesaid Statutory Notice, FDOT has and continues to use SCEC's patented inventions, in that sound barrier walls incorporating SCEC's apparatus patent exist and are in use by FDOT, up to an including the time of the filing of this action.

### FIRST CLAIM FOR RELIEF
### Direct Patent Infringement by FDOT

26.     SCEC herein incorporates by reference paragraphs 12 to 25, inclusive, as if restated herein.

27.     Subsequent to the issuance of U.S. Pat. No. 5,234,288 (method), and with full knowledge thereof, FDOT has commenced infringing said patent within this judicial district, and elsewhere, by the unauthorized inducement and solicitation of others to make, use, offer to sell or sell sound barrier walls in accordance with SCEC's patented method.

28.     FDOT, by its solicitation of SCEC's invention for road projects, has derived substantial monetary benefit and gains, and has failed to pay just compensation for the use of SCEC's patented method.

29.     SCEC is entitled to the exclusive use and enjoyment of its patent rights.   As a result of FDOT's continued infringement, SCEC has suffered and will continue to suffer irreparable damages.

30.     Unless FDOT is enjoined, it will continue its acts of infringement of SCEC's patent rights, cause SCEC to suffer irreparable harm to the unjust benefit, enrichment and gain of FDOT.

31.     Unless FDOT is enjoined, it will continue to induce others to infringe SCEC's patent

rights, and cause SCEC to suffer irreparable harm, to the unjust benefit, enrichment and gain of FDOT.

32.    FDOT's acts of infringement have been willful and in conscious disregard to SCEC's patent rights, and, thus, comprise intentional infringement.

33.    SCEC has no adequate remedy at law and cannot obtain relief for infringement of its patent rights, save in this Court, by an injunction, accounting, and damages.

## SECOND CLAIM FOR RELIEF
### Direct Patent Infringement by FDOT

34.    SCEC herein incorporates by reference paragraphs 12 to 25, inclusive, as if restated herein.

35.    Subsequent to the issuance of U.S. Pat. No. 5,429,455 (apparatus), and with full knowledge thereof, FDOT has commenced infringing said patent within this judicial district, and elsewhere, by the unauthorized use of SCEC's wall and column design on state awarded road construction projects, and by its inducement and solicitation of others to make, use, offer to sell and sell sound barrier walls in accordance with SCEC's patented invention.

36.    FDOT, by its unauthorized use and solicitation of use of SCEC's invention on such road projects, has derived substantial monetary benefit and gains, and has failed to pay just compensation for the use of SCEC's patented integrated wall and column invention.

37.    SCEC is entitled to the exclusive use and enjoyment of its patent rights.   As a result of FDOT's continued infringement, SCEC has suffered and will continue to suffer irreparable damages.

38.    Unless FDOT is enjoined, it will continue its acts of infringement of SCEC's patent

-10-

rights, and cause SCEC to suffer irreparable harm, to the unjust benefit, enrichment and gain of the FDOT.

39. Unless FDOT is enjoined, it will continue to induce others to infringe SCEC's patent rights, and cause SCEC to suffer irreparable harm, to the unjust benefit, enrichment and gain of FDOT.

40. FDOT's acts of infringement have been willful and in conscious disregard to SCEC's patent rights, and, thus, comprise intentional infringement.

41. SCEC has no adequate remedy at law and cannot obtain relief for infringement of its patent rights, save in this Court, by an injunction, accounting, and damages.

### THIRD CLAIM FOR RELIEF
### Direct Patent Infringement by Competing Contractors

42. SCEC herein incorporates by reference paragraphs 12 to 25, inclusive, as if restated herein.

43. Subsequent to the issuance of U.S. Pat. No. 5,234,288 (method), and U.S. Pat. No. 5,429,455 (apparatus), and with full knowledge thereof, the COMPETING CONTRACTORS have infringed said patent rights within this judicial district by the manufacture, use, offer to sell and sale of sound barrier walls in accordance with SCEC's patented method and apparatus in the course of performing state construction contracts on behalf of FDOT. By their actions, the COMPETING CONTRACTORS derived substantial monetary gain and benefit, to the detriment and damage of the Plaintiff.

44. The COMPETING CONTRACTORS acts of infringement have been willful and in conscious disregard to SCEC's patent rights, and, thus, comprise intentional infringement.

45. SCEC has no adequate remedy at law and cannot obtain relief for infringement of its

patent rights, save in this Court, by an injunction, accounting, and damages.

## FOURTH CLAIM FOR RELIEF
### Unfair Competition - 15 U.S.C. 1125(a)

46.  SCEC herein incorporates by reference paragraphs 12 to 25, inclusive, as if restated herein.

47.  The consuming public has come to know that SCEC owns the proprietary method for manufacturing an apparatus comprising an integral combination of a column and pile for use in building structures in a sandy soil and the apparatus itself as described hereinabove.

48.  SCEC's method of manufacturing an apparatus comprising an integral combination of a column and pile for use in building structures in a sandy soil and the apparatus itself are inherently distinctive and are used in commerce of the United States.

49.  FDOT has and continues to represent, by word and/or deed, in commerce of the United States, that it has the right to solicit bids incorporating SCEC's designs, engineering drawings and specifications, and is authorized to use and practice SCEC's method of manufacturing its patented integral combination of a column and pile for use in building structures in a sandy soil, which representations are false and known to FDOT to be false.

50.  FDOT has diverted and continues to divert construction contracts from SCEC to third parties, including the COMPETING CONTRACTORS, with the knowledge that SCEC is the only authorized and legitimate source of construction services for the construction of an integral combination of a column and pile for use in building structures in a sandy soil, in accordance with U.S. Pat. No. 5,234,288 and U.S. Pat. No. 5,429,455.

51.  FDOT has acted at all times without the authorization of SCEC.

52.  As a result of the actions of FDOT, there is both a likelihood and/or actual confusion in

-12-

the marketplace regarding the source or origin of SCEC's exclusive novel and innovative designs and patent rights therein for the construction of an integral combination of a column and pile for use in building structures in a sandy soil and method therefor.

53.    As a result of the actions of FDOT, FDOT has and continues to unfairly compete against SCEC and has unlawfully gained access to and utilized one or more of SCEC's novel and innovative designs and patent rights without just compensation to SCEC.

54.    SCEC has no adequate remedy at law and cannot obtain relief for the unfair competition, save in this Court, by an injunction, accounting, and damages.

## FIFTH CLAIM FOR RELIEF
## Taking of Property without Due Process and Compensation - 42 U.S.C. 1983

55.    SCEC herein incorporates by reference paragraphs 12 to 25, inclusive, as if restated herein.

56.    The laws of the state of Florida explicitly recognize SCEC's rights to exclusive use and enjoyment of its property, including intangible personal property, such as SCEC's right to the exclusive use and enjoyment of its proprietary designs, engineering drawings and specifications for the construction of sound barrier walls, and U.S. patents, specifically, U.S. Pat. No. 5,234,288 and U.S. Pat. No. 5,429,455.

57.    The laws of the state of Florida explicitly recognize SCEC's right to just compensation for the use of its exclusive property, namely its proprietary designs, engineering drawings and specifications for the construction of sound barrier walls. Moreover, FDOT's *Standard Specifications for Road & Bridge Construction*, §4-3.5 *et seq.* (1986, pp. 17-21), provides for the compensation to a contractor, such as SCEC, for "instant savings" and "collateral savings" upon acceptance and use of cost reduction proposals, hereinafter

"Value Engineering Change Proposal" or "VECP", attached as Exhibit "C".

58.    FDOT, as early as 1989, acknowledged SCEC's proprietary ownership rights in its designs, engineering drawings and specifications for the construction of sound barrier walls, by an award of compensation to SCEC under its VECP submission for use in State Job No. 86070-3505.

59.    FDOT, no later than 1992, was on notice of SCEC's application(s) for patent protection directed to its proprietary designs, engineering drawings and specifications for the construction of sound barrier walls.

60.    Notwithstanding FDOT's actual knowledge of SCEC's proprietary rights and interests and the explicit FDOT policy for payment of compensation to contractors, such as SCEC, for "instant savings" and "collateral savings" under its own *Standard Specifications for Road & Bridge Construction*, Section 4-3.5 *et seq.*, under color or right and state law, FDOT has taken, adopted, used and continues to take, adopt and use SCEC's proprietary designs, engineering drawings and specifications for the construction of sound barrier walls, without compensation to SCEC.

61.    As a result of FDOT's illegal activity and wrongful taking of SCEC's property rights without due process, SCEC has been deprived of its rights and/or privileges secured to it by the Constitution and laws of the United States.

62.    FDOT's actions have been without legal justification and have been taken willfully and with a complete disregard to SCEC's intellectual property rights. FDOT's actions have been and are intentional and calculated to deprive SCEC of its property rights without fair, adequate and just compensation.

-14-

63.     SCEC has no adequate remedy at law and cannot obtain relief for violation of its due
        process rights, save in this Court, by an injunction, accounting, and damages.

## SIXTH CLAIM FOR RELIEF
### Breach Of Implied Contract

64.     SCEC herein incorporates by reference paragraphs 12 to 25, inclusive, as if restated
        herein.

65.     Pursuant to the FDOT *Standard Specifications for Road and Bridge Construction*, §4-3.5
        *et. seq.*, the FDOT provides as a value engineering incentive to contractors, such as SCEC
        and others, monetary consideration for the submission and acceptance of a Value
        Engineering Change Proposal ("VECP").

66.     At all material times hereto, the value engineering incentive program was in existence and
        operative.

67.     In accordance with the value engineering incentive program, SCEC submitted a VECP
        directed to and within the scope of its patent rights for the method of manufacturing an
        integrated column and pile for use in building structures in sandy soil, and the apparatus
        thereof.  The  VECP was accepted on or about July 30, 1990 as evidenced by an
        Executed Supplemental Agreement #2 for State Job No. 86070-3505.

68.     Upon completion of the aforementioned contract job, FDOT compensated SCEC fifty
        percent (50%) of the instant contract savings in accordance with §4-3.5.7 of the *Standard
        specifications for Road and Bridge Construction* (1986).

69.     Subsequent to the approval and acceptance of SCEC's VECP by FDOT in 1990, FDOT
        amended its *Standard Specifications for Road and Bridge Construction*, §4-3.5.8 by
        Special Provision on or about November 17, 1992 to provide for FDOT's future use to a

-15-

VECP to be "royalty free and without fee, other costs or surcharge".

70. SCEC's approved VECP has been, and continues to be, utilized by FDOT subsequent to SCEC's initial State Job No. 86070-3505 without payment therefor of a fifty percent (50%) sharing of cost savings to SCEC.

71. FDOT has received, and continues to receive, the benefit of its bargain in conjunction with the use of SCEC's VECP.

72. FDOT has continued, and continues, to realize a cost savings as a result of SCEC's VECP, however, without further payment to SCEC represented by fifty percent (50%) of that cost savings and any collateral savings.

73. All conditions precedent have been performed by SCEC.

74. FDOT is in breach of its obligation to pay SCEC 50% of all costs savings realized from the use of SCEC's VECP hereinabove stated.

75. SCEC has no adequate remedy at law and cannot obtain relief for breach of its contract with FDOT, save in this Court, by an injunction, accounting, and damages.

### DEMAND FOR JUDGMENT

WHEREFORE, SCEC demands judgment as follows:

(a) That Defendants, their agents, servants, employees, and attorneys and all persons acting on behalf of the Defendants, be permanently enjoined from infringing United States Patent Nos. 5,234,288 and 5,429,455 by making, using, offering to sell or selling the inventions predicated on SCEC's patented apparatus and method; or by inducing others to commit any such acts of infringement;

(b) That all structures incorporating SCEC's inventions be removed and/or modified so as

-16-

to effectively cease and desist the unauthorized use of the SCEC's inventions in violation of its exclusive patent rights;

(c)     That SCEC be awarded damages incurred as a result of Defendants' unlawful acts complained of herein, such damages including without limitation all such relief as is accorded the prevailing party under 35 U.S.C. 284; 15 U.S.C. 1117; and 42 U.S.C. 1983;

(d)     That said patent infringement damages be trebled due to the willful nature of Defendants' acts of infringement and unfair competition, and that a reasonable attorneys' fee be awarded to Plaintiff;

(e)     That the Defendants be required to account for and pay over to SCEC all monies realized, profits made, and/or costs saved by Defendants from the unlawful use of said patents;

(f)     That Defendant FDOT be required to pay fifty percent (50%) of construction costs savings and collateral savings on all jobs in which SCEC's VECP was adopted and used, and;

(g)     That SCEC have such other relief as this Court deems proper, together with a reasonable attorneys' fee, interest and costs.

## DEMAND FOR A JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

Dated: 8/21/97

RICHARD S. ROSS, ESQ.
Attorney for Plaintiff
   State Contracting and Engineering Corp.
Fla. Bar No. 436,630
Senator Building
13899 Biscayne Blvd.
Suite 107
North Miami Beach, Florida 33181
Tel. (305) 945-7444
Fax. (305) 945-7354

Of Counsel:
John H. Faro, Esq.
P.O. Box 4904
Miami, Florida 33149-4904

## VERIFICATION OF COMPLAINT

Timothy M. Smith verifies that he has reviewed the foregoing complaint on behalf of the plaintiff, and that to the best of his knowledge, information, and belief, the allegations contained therein are true and correct.

Dated: 8/18/97

State Contracting and Engineering Corp.
By: Timothy M. Smith, President

-18-

The
United
States
of
America

## The Commissioner of Patents and Trademarks

*Has received an application for a patent for a new and useful invention. The title and description of the invention are enclosed. The requirements of law have been complied with, and it has been determined that a patent on the invention shall be granted under the law.*

*Therefore, this*

## United States Patent

*Grants to the person or persons having title to this patent the right to exclude others from making, using or selling the invention throughout the United States of America for the term of seventeen years from the date of this patent, subject to the payment of maintenance fees as provided by law.*

*Michael K. Kirk*

Acting Commissioner of Patents and Trademarks

*Marthia A. Thompson*

*Attest*

PLAINTIFF'S
EXHIBIT
A

# United States Patent [19]

## Bone

| | |
|---|---|
| [11] Patent Number: | **5,234,288** |
| [45] Date of Patent: | **Aug. 10, 1993** |

US005234288A

[54] **INTEGRATED COLUMN AND PILE**

[75] Inventor: **Michael C. Bone, Pembroke Pines, Fla.**

[73] Assignee: **State Paving Corporation, Fort Lauderdale, Fla.**

[21] Appl. No.: **758,431**

[22] Filed: **Aug. 29, 1991**

### Related U.S. Application Data

[63] Continuation of Ser. No. 545,557, Jun. 29, 1990, abandoned.

[51] Int. Cl.⁵ ............................................. E02D 5/30
[52] U.S. Cl. ...................................... 405/239; 405/256; 405/233; 405/231
[58] Field of Search ............... 405/239, 255, 256, 233, 405/232, 231, 230

[56] **References Cited**

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1,566,582 | 12/1925 | Cortes | 405/256 X |
| 3,191,390 | 6/1965 | Schutte | 405/239 X |
| 4,038,827 | 8/1977 | Pryke | 405/239 |
| 4,040,260 | 8/1977 | Pryke | 405/239 |
| 4,060,994 | 12/1977 | Chitis | 405/239 X |
| 4,127,002 | 11/1978 | DeWitt | 405/239 |
| 4,247,225 | 1/1981 | Chickini, Jr. et al. | 405/239 X |
| 4,293,242 | 10/1981 | Merjan | 405/239 |
| 4,715,745 | 12/1987 | Reichert et al. | 405/239 X |

*Primary Examiner*—Randolph A. Reese
*Assistant Examiner*—J. Russell McBee
*Attorney, Agent, or Firm*—Joseph Zallen

[57] **ABSTRACT**

An integral combination of column and pile for use in building structures in a sandy soil. The method of formation is to provide a ground situs of suitable depth and width formed preferably by an hydraulic-powered auger. The situs is then filled with a cementitious slurry. A reinforced precast concrete column is provided having reinforcing bars extending a substantial length out of its bottom. The exposed bars are inserted into the slurry until the column merges with the slurry. Upon the hardening of the slurry, the result is an integral column and pile set into the ground.

**3 Claims, 4 Drawing Sheets**





**U.S. Patent**     Aug. 10, 1993     Sheet 1 of 4     **5,234,288**



FIG.1

FIG.2

FIG.3

FIG.5

FIG.6



FIG.4



FIG.7



FIG.8

1

5,234,288

# INTEGRATED COLUMN AND PILE

This application is a continuation of the application Ser. No. 07/545,557 filed Jun. 29, 1990 and now abandoned. 5

## BACKGROUND OF THE INVENTION

This invention relates to a column which can be used in soil having a high water table. In particular it relates 10 to a combination of column and pile for use in a sandy soil.

In sandy soils auger-cast piles have been used to carry foundation loads. In a typical situation, an hydraulic-powered auger with continuous flighting is rotated into 15 the soil to a predetermined depth. A mixture of sand and cement is then pumped through a hole in the auger's stem while the auger is being slowly withdrawn from the hole. The resultant cementitious mixture is of greater density than the surrounding soil and thus acts 20 to support the sides of the hole. This supporting action is especially useful in locations such as Florida where loose sands and a high water table make drill holes unsuitable. After the hole has been filled with cementitious material and the auger removed, steel reinforce- 25 ment is inserted so that the final product is a steel rein-forced concrete support column or pile cast within the soil with anchor bolts at the top to connect to the columns or post which it is intended to support.

In the past when a contractor attempted to use con- 30 crete posts or columns with auger-cast piles, consider-able amounts of the cementitious grout were displaced when the post was inserted into the hole, sometimes as much as one-half the volume of the hole. Accordingly, this has not been a feasible method. 35

## OBJECTS OF INVENTION

The present invention avoids the problems of the prior art. It provides a unitary, integral column and pile seated in the ground, with no anchor bolts or the like 40 being required. It provides such an integral column and pile which can be used in structures of all sorts, including buildings, posts which support panels, and large advertising signs.

Other objects and advantages of this invention will be 45 apparent from the description and claims which follow taken together with the appended drawings.

## SUMMARY OF INVENTION

The method of this invention comprises first prepar- 50 ing a hole of sufficient depth and cross-section. Then a mass of suitable, wet, cementitious material is inserted into the hole, a plurality of reinforcing bars extending out of the bottom of the column. The column is placed on the mass, until the bottom of the column member 55 merges with the mass. The cementitious material is then permitted to harden. The result is an integral column and pile firmly rooted in the ground and capable of the support generally attributable to a column of its size, shape and composition. 60

One method of providing the mass of cementitious material in a hole of suitable depth and width is to use an auger having a central channel. As the auger rotates and cuts into the earth, soil is removed upwardly. Cementitious material is pumped through the channel which has 65 a retaining means at the bottom. At the proper time the retaining means or valve is opened to that the cementitious material now flows into the empty space caused by

2

the soil removal by the auger. When the auger is with-drawn, the pool of cementitious material is now avail-able to receive the exposed reinforcing bars which ex-tend out of the precast column.

The columns that can be used in this invention vary widely in size and shape as well as intended use. They can be used in building structures or, as shown in the illustrations, as posts for support of walls such as noise barriers or large advertising signs. The described method avoids the necessity for attaching a column or post to a set of reinforcing bars and/or anchor bolts separately inserted into the pool of cementitious mate-rial. False-work can be used to keep the precast column and its extending reinforcing bars in proper orientation until the cementitious material has reached a predeter-mined strength.

## BRIEF DESCRIPTION OF DRAWINGS

FIG. 1 is a vertical section partially broken away showing a hollow-shafted continuous-flight auger which is being screwed into an earth situs to drill a hole of requisite depth.

FIG. 2 is a vertical cross-section showing the drill situs filled with cementitious material.

FIG. 3 is a front view of a reinforced concrete col-umn with exposed reinforcing bars extending out of the bottom of the column.

FIG. 4 is a perspective view with partial cutaway and partial vertical section showing a final product of the invention, in this instance an integral post and pile.

FIG. 5 is a cross-section along line 5—5 of FIG. 4.

FIG. 6 is a transverse section along line 6—6 of FIG. 3.

FIG. 7 is a perspective view with partial cutaway and a partial vertical section showing a corner of a building whose columns are made in accordance with this inven-tion.

FIG. 8 is an advertising sign of very large dimension supported by a single integrated column and pile made in accordance with this invention.

## SPECIFIC EXAMPLES OF INVENTION

As illustrated in FIGS. 1–6, the first step is to form a hole of suitable dimensions in the earth. As illustrated in FIG. 1 an auger 11 having a continuous flight 12 re-moves earth 14 as it penetrates the soil 13 to form the desired hole A. In a method similar to that described in the Turzillo patent, U.S. Pat. No. 3,512,366, cementi-tious slurry 15 is pumped into the central channel of auger 11 until it fills the hole A when the auger 11 is withdrawn. While the cementitious slurry 15 is still wet a precast concrete member 20, in this case a post for use in supporting noise barrier walls, is inserted into the slurry. Post 20 has exposed reinforcing bars 21–26 ex-tending from its bottom. These bottom extensions are immersed in the slurry until the bottom of the column merges with the slurry. While the cementitious material is setting and in order to prevent misalignment, false-work, as illustrated in wood members 27–29, can used as a temporary support. Depending on the shape and size of the column, falsework is not always needed.

The building structure illustrated in FIG. 7 has its foundation and columns constructed in a similar manner as illustrated in FIGS. 1–6. The dimensions are selected in accordance with proper structural engineering prin-ciples.

Building column 101 extends from floor 105 through floor 104 and has reinforcing bars 101a which extend

5,234,288

3

most of the depth of ground hole 108 and is covered by the hardened grout 108a. Similarly, column 102 extends from floor 105 through floor 104 to ground hole 109 filled with hardened grout 112. Column 103 is shown in partial breakaway to show its extended reinforcing bars 103a in hole 110 filled with grout 113. The remaining floors 106, 107, and columns of the building are formed in a conventional manner.

The great strength of the integrated column-pile of this invention enables it to be utilized as a single support for a very large advertising sign 200, as for example, a sign 30 feet long as shown in FIG. 8. A hole 202 of about four foot diameter was prepared in ground 204 and filled with cementitious slurry 202 to receive the reinforcing bars 201a extending from the bottom of precast concrete column 201 which has a diameter of two feet. The sign 205 is attached to the upper portion of the column. Hitherto, complicated and expensive framing supports were required for such signs.

4

I claim:

1. A method of forming a ground-supported column or post, comprising the steps of providing a ground situs of suitable depth and width, filling said situs with a cementitious slurry, providing a reinforced, precast concrete member whose reinforcing bars extend out of the bottom of said member a substantial length beyond said bottom to form an exposed portion, inserting said exposed portion into said slurry until said member merges with said slurry, and permitting said slurry to harden, thus providing an integral column and pile set in the ground.

2. The method of claim 1 wherein the ground situs and slurry is provided by an auger which removes earth as it penetrates the soil to form the hole and permits pumping the cementitious slurry into the hole.

3. The method of claim 1 wherein falsework is used to keep the precast concrete member in position while the slurry is hardening.

* * * * *

*The United States of America*

### The Commissioner of Patents and Trademarks

*Has received an application for a patent for a new and useful invention. The title and description of the invention are enclosed. The requirements of law have been complied with, and it has been determined that a patent on the invention shall be granted under the law.*

*Therefore, this*

### United States Patent

*Grants to the person or persons having title to this patent the right to exclude others from making, using or selling the invention throughout the United States of America for the term of seventeen years from the date of this patent, subject to the payment of maintenance fees as provided by law.*

*Bruce Lehman*

Commissioner of Patents and Trademarks

*Sandra J. Morton*

Attest

PLAINTIFF'S
EXHIBIT

B

US005429455A

## United States Patent [19]

### Bone

[11] Patent Number: 5,429,455

[45] Date of Patent: * Jul. 4, 1995

[54] INTEGRATED COLUMN AND PILE

[75] Inventor: **Michael C. Bone,** Pembroke Pines, Fla.

[73] Assignee: **State Paving Corporation,** Fort Lauderdale, Fla.

[ * ] Notice: The portion of the term of this patent subsequent to Aug. 10, 2010 has been disclaimed.

[21] Appl. No.: **82,556**

[22] Filed: **Jun. 28, 1993**

#### Related U.S. Application Data

[60] Division of Ser. No. 758,431, Aug. 29, 1991, Pat. No. 5,234,288, which is a continuation of Ser. No. 545,557, Jun. 29, 1990, abandoned.

[51] Int. Cl.6 ............................................... E02D 5/30
[52] U.S. Cl. .................................... 405/239; 405/231; 405/233; 405/256
[58] Field of Search ............... 405/239, 255, 256, 233, 405/232, 231, 230

[56] References Cited

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1,566,582 | 12/1925 | Cortes | 405/256 X |
| 3,191,390 | 6/1965 | Schutte | 405/239 X |
| 4,038,827 | 8/1977 | Pryke | 405/239 |
| 4,040,260 | 8/1977 | Pryke | 405/239 |
| 4,060,994 | 12/1977 | Chitis | 405/239 X |
| 4,127,002 | 11/1978 | DeWitt | 405/239 |
| 4,247,225 | 1/1981 | Chickini, Jr. et al. | 405/239 X |
| 4,293,242 | 10/1981 | Merjan | 405/239 |
| 4,715,745 | 12/1987 | Reichert et al. | 405/239 X |
| 5,234,288 | 8/1993 | Bone | 405/239 |

*Primary Examiner*—Dennis L. Taylor
*Attorney, Agent, or Firm*—Joseph Zallen

[57]                 ABSTRACT

An integral combination of column and pile for use in building structures in a sandy soil. The method of formation is to provide a ground situs of suitable depth and width formed preferably by an hydraulic-powered auger. The situs is then filled with a cementitious slurry. A reinforced precast concrete column is provided having reinforcing bars extending a substantial length out of its bottom. The exposed bars are inserted into the slurry until the column merges with the slurry. Upon the hardening of the slurry, the result is an integral column and pile set into the ground.

3 Claims, 4 Drawing Sheets



maintenance fees
ven years and six
s thereafter upon
nd timing of the
payment of the
e on or before the
t will expire as of

**U.S. Patent**   July 4, 1995   Sheet 1 of 4   **5,429,455**



FIG.1

FIG.2

FIG.5

FIG.6

FIG.3



FIG. 4



FIG.7



FIG.8

5,429,455

**1**

# INTEGRATED COLUMN AND PILE

## BACKGROUND OF INVENTION

This is a division of application Ser. No. 07/758,431, filed Aug. 29, 1991, now U.S. Pat. No. 5,234,288 which is a file wrapper continuation of Ser. No. 07/545,557, filed Jun. 29, 1990 now abandoned.

This invention relates to a column which can be used in soil having a high water table. In particular it relates to a combination of column and pile for use in a sandy soil.

In sandy soils auger-cast piles have been used to carry foundation loads. In a typical situation, an hydraulic-powered auger with continuous flighting is rotated into the soil to a predetermined depth. A mixture of sand and cement is then pumped through a hole in the auger's stem while the auger is being slowly withdrawn from the hole. The resultant cementitious mixture is of greater density than the surrounding soil and thus acts to support the sides of the hole. This supporting action is especially useful in locations such as Florida where loose sands and a high water table make drill holes unsuitable. After the hole has been filled with cementitious material and the auger removed, steel reinforcement is inserted so that the final product is a steel reinforced concrete support column or pile cast within the soil with anchor bolts at the top to connect to the columns or post which it is intended to support.

In the past when a contractor attempted to use concrete posts or columns with auger-cast piles, considerable amounts of the cementitious grout were displaced when the post was inserted into the hole, sometimes as much as one-half the volume of the hole. Accordingly, this has not been a feasible method.

## OBJECTS OF INVENTION

The present invention avoids the problems of the prior art. It provides a unitary, integral column and pile seated in the ground, with no anchor bolts or the like being required. It provides such an integral column and pile which can be used in structures of all sorts, including buildings, posts which support panels, and large advertising signs.

Other objects and advantages of this invention will be apparent from the description and claims which follow taken together with the appended drawings.

## SUMMARY OF INVENTION

The method of this invention comprises first preparing a hole of sufficient depth and cross-section. Then a mass of suitable, wet, cementitious material is inserted into the hole, a plurality of reinforcing bars extending out of the bottom of the column. The column is placed on the mass, until the bottom of the column member merges with the mass. The cementitious material is then permitted to harden. The result is an integral column and pile firmly rooted in the ground and capable of the support generally attributable to a column of its size, shape and composition.

One method of providing the mass of cementitious material in a hole of suitable depth and width is to use an auger having a central channel. As the auger rotates and cuts into the earth, soil is removed upwardly. Cementitious material is pumped through the channel which has a retaining means at the bottom. At the proper time the retaining means or valve is opened to that the cementitious material now flows into the empty space caused by

**2**

the soil removal by the auger. When the auger is withdrawn, the pool of cementitious material is now available to receive the exposed reinforcing bars which extend out of the precast column.

The columns that can be used in this invention vary widely in size and shape as well as intended use. They can be used in building structures or, as shown in the illustrations, as posts for support of walls such as noise barriers or large advertising signs. The described method avoids the necessity for attaching a column or post to a set of reinforcing bars and/or anchor bolts separately inserted into the pool of cementitious material. False-work can be used to keep the precast column and its extending reinforcing bars in proper orientation until the cementitious material has reached a predetermined strength.

## BRIEF DESCRIPTION OF DRAWINGS

FIG. 1 is a vertical section partially broken away showing a hollow-shafted continuous-flight auger which is being screwed into an earth situs to drill a hole of requisite depth.

FIG. 2 is a vertical cross-section showing the drill situs filled with cementitious material.

FIG. 3 is a front view of a reinforced concrete column with exposed reinforcing bars extending out of the bottom of the column.

FIG. 4 is a perspective view with partial cutaway and partial vertical section showing a final product of the invention in this instance an integral post and pile.

FIG. 5 is a cross-section along line 5—5 of FIG. 4.

FIG. 6 is a transverse section along line 6—6 of FIG. 3.

FIG. 7 is a perspective view with partial cutaway and a partial vertical section showing a corner of a building whose columns are made in accordance with this invention.

FIG. 8 is an advertising sign of very large dimension supported by a single integrated column and pile made in accordance with this invention.

## SPECIFIC EXAMPLES OF INVENTION

As illustrated in FIGS. 1–6, the first step is to form a hole of suitable dimensions in the earth. As illustrated in FIG. 1 an auger 11 having a continuous flight 12 removes earth 14 as it penetrates the soil 13 to form the desired hole A. In a method similar to that described in the Turzillo patent, U.S. Pat. No. 3,512,366, cementitious slurry 15 is pumped into the central channel of auger 11 until it fills the hole A when the auger 11 is withdrawn. While the cementitious slurry 15 is still wet a precast concrete member 20, in this case a post for use in supporting noise barrier walls, is inserted into the slurry. Post 20 has exposed reinforcing bars 21–26 extending from its bottom. These bottom extensions are immersed in the slurry until the bottom of the column merges with the slurry. While the cementitious material is setting and in order to prevent misalignment, false-work, as illustrated in wood members 27–29, can used as a temporary support. Depending on the shape and size of the column, falsework is not always needed.

The building structure illustrated in FIG. 7 has its foundation and columns constructed in a similar manner as illustrated in FIGS. 1–6. The dimensions are selected in accordance with proper structural engineering principles.

5,429,455

**3**

Building column 101 extends from floor 105 through floor 104 and has reinforcing bars 101a which extend most of the depth of ground hole 108 and is covered by the hardened grout 108a. Similarly, column 102 extends from floor 105 through floor 104 to ground hole 109 filled with hardened grout 112. Column 103 is shown in partial breakaway to show its extended reinforcing bars 103a in hole 110 filled with grout 113. The remaining floors 106, 107, and columns of the building are formed in a conventional manner.

The great strength of the integrated column-pile of this invention enables it to be utilized as a single support for a very large advertising sign 200, as for example, a sign 30 feet long as shown in FIG. 8. A hole 202 of about four foot diameter was prepared in ground 204 and filled with cementitious slurry 202 to receive the reinforcing bars 201a extending from the bottom of precast concrete column 201 which has a diameter of two feet. The sign 205 is attached to the upper portion of the column. Hitherto, complicated and expensive framing supports were required for such signs.

I claim:

1. A precast reinforced concrete member containing reinforcing bars which have exposed portions extending beyond one end of the member and parallel to the longitudinal dimension of the member; the number, size and length of such exposed portions being such as to provide sufficient strength when the end of said concrete member is merged with and the bars inserted into a foundation pile of initially wet, cementitious material, which material is then allowed to set; said exposed portions being further characterized in being com-

**4**

pletely surrounded by said cementitious material; said concrete member and said pile being merged without mechanical attachment.

2. A ground-supported structure comprising the integral combination of a precast column and a foundation; said foundation comprising a mass of initially wet cementitious material in a hole in the ground; said column comprising a precast reinforced concrete member whose reinforcing bars extend out of said member's bottom parallel to the longitudinal dimension of the member into said cementitious material and are completely surrounded by said cementitious material, the bottom of said column portion being merged with said cementitious material to form an integral structure embedded in the ground when said cementitious material has hardened; said column and said foundation being merged without mechanical attachment.

3. The combination of a post component and a foundation component; said foundation component occupying a hole in the ground and comprising initially wet, cementitious material; said post component comprising a precast reinforced concrete post having reinforcing bars which extend out from the bottom of said member parallel to the longitudinal dimension of the member and into said cementitious material, are completely surrounded by said cementitious material, and merge with said foundation component to form an integral unit embedded in the ground when said cementitious material has hardened; said post component and said foundation component being merged without mechanical attachment.

* * * * *

5

10

15

20

25

30

35

40

45

50

55

60

65

# FLORIDA
## DEPARTMENT
## OF
## TRANSPORTATION



## Standard Specifications
## for
## Road and Bridge
## Construction

## Edition of 1986

Tallahassee

PLAINTIFF'S
EXHIBIT
C

in the Contract. The Engineer will promptly investigate the conditions, and if he finds that such conditions do materially so differ and cause an increase or decrease in the Contractor's cost of, or the time required for, performance of any part of the work under the contract, whether or not changed as a result of such conditions, an equitable adjustment will be made and the contract modified in writing accordingly.

No claim of the Contractor under this clause will be allowed unless the Contractor has given the notice required above; provided, however, the time prescribed therefore may be extended by the Department.

No claim by the Contractor for an equitable adjustment hereunder will be allowed if asserted after final payment under this Contract.

## 4-3.5 Value Engineering Incentive:

### 4-3.5.1 Intent and Objective:

(1) This Subarticle applies to any cost reduction proposal (hereinafter referred to as a Value Engineering Change Proposal or VECP) initiated and developed by the Contractor for the purpose of refining the contract documents so as to contribute to design cost effectiveness or significantly improve the quality of the end result. This Subarticle does not, however, apply to any such proposal unless it is identified by the Contractor, at the time of its submission to the Department, as a proposal submitted pursuant to this Subarticle.

(2) VECPs contemplated are those that would result in net savings to the Department by providing either: (1) a decrease in the cost of performance of the Contract, or; (2) a reduction in cost of ownership (hereinafter referred to as collateral costs) of the work provided by this Contract, regardless of acquisition costs. VECPs must result in savings without impairing any essential functions and characteristics such as safety, service, life, reliability, economy of operation, ease of maintenance, aesthetics and necessary standard design features. However, nothing herein precludes the submittal of VECPs where the required functions and characteristics could be combined, reduced or eliminated as being nonessential or excessive for the function served by the work involved.

(3) Proposed changes in the basic design of a bridge or of a pavement system, or which would require additional right of way will not normally be given consideration as a VECP. Substitution of bid items established in this contract or substitution of another alternate bid item for the one on which the Contractor bid will not be allowed under this Subarticle. A VECP submittal based on the use of borrow material from within the project limits will not be considered.

17

**4-3.5.1**

As an exception to the above requirements, when the work includes structures that have characteristics making concrete segmental construction economically favorable when compared with the cost of the plan design, the Department will accept for consideration a Value Engineering Proposal substituting concrete segmental construction designs submitted by the Contractor.

**4-3.5.2 Subcontractors:**

The Contractor is encouraged to include the provisions of this Subarticle in contracts with subcontractors. The Contractor shall encourage submission of VECPs from subcontractors; however, it is not mandatory that VECPs be submitted nor is it mandatory that the Contractor accept or transmit to the Department VECPs proposed by his subcontractors.

**4-3.5.3 Data Requirements:**

As a minimum, the following information shall be submitted by the Contractor with each VECP:

(1) A description of the difference between the existing contract requirement and the proposed change, and the comparative advantages and disadvantages, including justification for modifying the characteristic of a work item.

(2) Separate detailed cost estimates for both the existing contract requirement and the proposed change, and an estimate of the change in contract price including consideration of the costs of development and implementation of the VECP and the sharing arrangement set forth hereinafter.

(3) An itemization of plan details, design standards or specifications that must be changed if the VECP is adopted and include any quantity variation.

(4) An estimate of the effects the VECP would have on collateral costs to the Department, including an estimate of the sharing that the Contractor requests be paid by the Department upon approval of the VECP.

(5) Engineering or other analysis in sufficient detail to identify and describe each requirement of the contract which must be changed if the VECP is accepted, with recommendation as to how to accomplish each such change and its effect on unchanged work. When complex engineering analyses are required the Department shall require the analyses to be performed by a prequalified consultant in the applicable class of work.

(6) A statement of the time by which approval of the VECP must be issued by the Department to obtain the total estimated cost reduction during the remainder of this Contract, noting any effect on the contract completion time or delivery schedule.

18

**4-3.5.5**

**4-3.5.4 Processing Procedures:**

Two copies of each VECP shall be submitted, one to the Engineer, or his duly authorized representative, and one to the Department's Value Engineering Office. VECPs will be processed expeditiously; however, the Department will not be liable for any delay in acting upon a VECP submitted pursuant to this Subarticle. The Contractor may withdraw, in whole or in part, a VECP not accepted by the Department within the period specified in the VECP. The Department shall not be liable for VECP development cost in the case where a VECP is rejected or withdrawn.

The Engineer shall be the sole judge of the acceptability of a VECP and of the estimated net savings in construction costs from the adoption of all or any part of such proposal. In determining the estimated net savings, the right is reserved to disregard the contract bid prices if, in the judgment of the Engineer, such prices do not represent a fair measure of the value of work to be performed or to be deleted.

The Engineer may modify a VECP, with the concurrence of the Contractor, to make it acceptable. If any modification increases or decreases the savings resulting from the VECP, the Contractor's fair share will be determined upon the basis of the VECP as modified.

The Engineer may accept, in whole or part, a VECP submitted pursuant to this Subarticle by giving the Contractor written notice thereof reciting acceptance under this Subarticle. However, pending execution of a formal supplemental agreement or unless otherwise directed, the Contractor shall remain obligated to perform in accordance with the terms of the existing contract.

An approved VECP shall be finalized through an equitable adjustment in the contract price and time of performance by the execution of a supplemental agreement pursuant to the provisions of this Subarticle bearing a notation so stating. Where an approved VECP also involves any other applicable Article of this contract such as "Default and Termination of Contract," "Temporary Suspension of Work," or "Extra Work," then these Articles shall also be cited.

**4-3.5.5 Computations for Change in Contract Cost of Performance:**

Separate estimates shall be prepared for both the existing contract requirement and the proposed change. Each estimate shall consist of an itemized breakdown utilizing appropriate Department bid items of all costs of the Contractor and all subcontractors' work in sufficient detail to show unit quantities and costs of labor, materials and equipment.

19

**4-3.5.5**

Contractor development and implementation costs for the VECP shall be included in the estimate for the proposed change, but will not be recoverable. If the VECP is adopted, the Contractor's share of the savings as defined hereinafter shall be considered full compensation to the Contractor for the VECP.

Department costs of processing or implementation of a VECP shall not be included in the estimate. However, the Department reserves the right where it deems such action appropriate, to require the Contractor to share in the Department's cost of investigating a VECP submitted by the Contractor as a condition of considering such proposal. Where such a condition is imposed the Contractor shall indicate his acceptance thereof in writing, and such acceptance shall constitute full authority for the Department to deduct amounts payable to the Department from any monies due or that may become due to the Contractor under the contract.

In preparing the estimates, no allowance will be made for overhead, profit, and bond. The resultant net reduction in contract cost of perfomance shall be shared as stipulated hereinafter.

*4-3.5.6 Computations for Collateral Costs:*

Separate estimates shall be prepared for collateral costs of both the existing contract requirement and the proposed change. Each estimate shall consist of an itemized breakdown of all costs and the basis for the data used in the estimate. Cost benefits to the Department include, but are not limited to: reduced costs of operation, maintenance or repair, and extended useful service life. Increased collateral costs include the converse of such factors.

Computations shall be as follows:

(1) Costs shall be calculated over a 20-year period on a uniform basis for each estimate and shall include Department costs of processing or implementing the VECP.

(2) If the difference in the estimates as approved by the Department indicate a savings, the Contractor shall divide the resultant amount by 20 to arrive at the average annual net collateral savings. The resultant savings shall be shared as stipulated hereinafter.

(3) In the event that agreement cannot be reached on the amount of estimated collateral costs, the Engineer shall determine the amount. His decision is final.

*4-3.5.7 Sharing Arrangements:*

If a VECP is accepted by the Department, the Contractor is entitled to share in instant contract savings and collateral savings not as alternatives, but rather to the full exent provided for in this Subarticle. For the purposes of sharing under this Subarticle, the term "instant contract"

20

shall not include any changes to or other modifications of this Contract, executed subsequent to acceptance of the particular VECP, by which the Department increases the quantity of any item of work or adds any item of work. It shall, however, include any extension of the instant contract through exercise of an option (if any) provided under this Contract after acceptance of the VECP.

Except for innovative ideas the Contractor and Department shall each receive 50 percent of the net reduction in the cost of performance of this Contract. For innovative ideas the reduction in the cost of performance shall be shared as follows:

| Accrued Net Savings | Contractor's Share % | Department's Share % |
| --- | --- | --- |
| Less than $25,000 | 100 | 0 |
| $25,000 to $50,000 | 75 | 25 |
| Over $50,000 | 50 | 50 |

If a change is identical or similar to a previously submitted VECP or an idea previously utilized by the Department it will not be considered an innovative idea.

When collateral savings occur, the Contractor shall receive 20 percent of the average one year's net collateral savings.

The Contractor shall not receive instant savings or collateral savings shares on optional work listed in this Contract, until the Department exercises its option to obtain that work.

*4-3.5.8 Department's Future Rights to a VECP:* In the event of acceptance of a VECP, the Contractor hereby grants to the Department all rights to use, duplicate or disclose, in whole or in part, in any manner and for any purpose whatsoever, and to have or to permit others to do so, data reasonably necessary to fully utilize such proposal on this and any other Department contract.

**4-4 Extra Work.**

Whenever unanticipated work which is not covered by a price in the contract is found essential to the satisfactory completion of the contract within its intended scope, the Contractor shall perform such extra work under a Supplemental Agreement, subject to the provisions of 4-3.2 and 7-17, except that when the character of the extra work is such that, in the opinion of the Engineer, the estimated cost of performance cannot be determined within a reasonable degree of accuracy in advance, or should the Contractor and

21

**CIVIL COVER SHEET**

**97 7014**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I (a) PLAINTIFFS

STATE CONTRACTING & ENGINEERING CORPORATION

## DEFENDANTS

STATE OF FLORIDA, FLORIDA DEPARTMENT OF TRANSPORTATION, et al.

CIV-DAVIS

MAGISTRATE JUDGE BROWN

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _Broward_
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

A-Broward/97cv7014-Davis-Brown

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Richard S. Ross, Esq.
13899 Bisc. Blvd., #107
Miami, Fl 33181 305/945-7444

ATTORNEYS (IF KNOWN)

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:
DADE, MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

## II. BASIS OF JURISDICTION    (PLACE AN × IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES    (PLACE AN × IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☒ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. CAUSE OF ACTION    (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.

DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

28 USC §§ 1331, 1343(3), 1338; 15 USC §1121
Patent Infringement, Unfair Competition, Wrongful Taking, Breach/Contract

IVa. 5 days estimated (for both sides) to try entire case.

## V. NATURE OF SUIT    (PLACE AN × IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | B FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury— Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | ☐ 630 Liquor Laws | PROPERTY RIGHTS | B ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs | ☒ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| B ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | PERSONAL PROPERTY | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| B ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 690 Other | SOCIAL SECURITY | ☐ 850 Securities/Commodities/ Exchange |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | A LABOR | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | | ☐ 385 Property Damage Product Liability | B ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| A REAL PROPERTY | A CIVIL RIGHTS | B PRISONER PETITIONS | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | A FEDERAL TAX SUITS | ☐ 895 Freedom of Information Act |
| B ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus | B ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 890 Other Statutory Actions *A or B |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights *A or B | | | |

## VI. ORIGIN    (PLACE AN × IN ONE BOX ONLY)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Refiled   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Judge from Magistrate Judgment

Appeal to District

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

**DEMAND $**

Check YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☐ NO

## VIII. RELATED CASE(S) IF ANY    (See instructions):

JUDGE _____ DOCKET NUMBER _____

DATE  8/21/97

SIGNATURE OF ATTORNEY OF RECORD

UNITED STATES DISTRICT COURT
S/F  I-2
REV. 6/90

FOR OFFICE USE ONLY: Receipt No. 680605    Amount: 150.00

Date Paid: 08/21/97    M/ifp: _____